UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARLTON WRIGHT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SHANE NELSON, et al., ) <br> ) <br> Defendants. ) | No. 1:23-cv-01362-SEB-KMB |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Carlton Wright, who is incarcerated by the Indiana Department of Correction, alleges in this case that, when he was held at New Castle Correctional Facility ("NCCF"), he was placed in a cell that was regularly contaminated with leaking sewage water in violation of his Eighth Amendment rights. He further contends that these conditions prevented his practice of his religion in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First Amendment. Finally, Mr. Wright contends that defendant Shane Nelson had him placed and kept in this cell in retaliation for his filing of grievances. The defendants have moved for summary judgment. For the reasons below, that motion is **DENIED**.

**I.**
**Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir.

1

2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Wright the non-moving party and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

Mr. Wright was incarcerated in the M Unit of New Castle Correctional Facility on June 29, 2021, when he was placed in cell M1-113, after being released from segregation for his role in a fight with another inmate. *See* dkt. 1 at 4 (Verified Complaint). Shortly before his move to the M Unit, Mr. Wright filed a grievance against defendant Shane Nelson and other staff related to the fight. Dkt. 1 at 5. Mr. Nelson was the Unit Team Manager at this time and his responsibilities included approving bed moves. Dkt. 63-3 ¶ 4 (Nelson Aff.); dkt. 74-1 at 3 (Nelson Interrogatories)

("Bed moves are typically assigned by the case manager and then approved by the Unit Team Manager…"). Mr. Nelson had previously told Mr. Wright that if he did not stop filing grievances, he would make his life "a living hell." Dkt. 74-1 at 57 (Brown Aff.).

When he arrived at cell M1-113, Mr. Wright noticed that the smell of sewage coming from a puddle on the floor. *Id.* at 5-6. Mr. Wright notified non-party Officer Brown that the cell was flooded with unsanitary water, and Officer Brown told him he would put in a work order. *Id.* at 6. Mr. Wright moved into the cell reluctantly because he was concerned he would receive a conduct report for refusing a housing assignment. *Id.* He cleaned the floor with his personal towels and hygiene items. *Id.*

The next day, Mr. Wright's cell floor was flooded again with toilet wastewater. *Id.* at 7. He had to walk through the wastewater to collect his breakfast tray and complained to defendant Sergeant Ndiaye who was passing out the trays. *Id.* Sergeant Ndiaye saw and acknowledged the wastewater and said that he would put in a work order for the toilet to be fixed. *Id.* at 8.

These conditions persisted in Mr. Wright's cell from June 29 through July 20, 2021. *Id.* Mr. Wright spoke to defendants Sergeant Sparks, Sergeant Ndiaye, and Lieutenant Krul on multiple occasions about these conditions. *Id.* at 8-9. The defendants told Mr. Wright that they would put in a work order but would not move him to another, sanitary, cell. *Id.* at 9. Mr. Wright also complained to Mr. Nelson about these conditions when he walked the range. *Id.* On July 13, Mr. Wright stood at his cell door "screaming, kicking, and banging on his cell door" every time Sergeant Sparks made his 30-minute rounds. *Id.* at 10. Mr. Wright requested to be let out of the cell to mop up the wastewater. *Id.* at 10-11. During this time, Mr. Wright was let out of his cell to mop up the wastewater only twice. *Id.* at 11. He otherwise had to use his personal items, including

t-shirts, towels, and soap to clean the floor. *Id.* Mr. Wright had to eat all of his meals in his cell under these conditions. *Id.* at 12. Mr. Wright's toilet was fixed on July 20, 2021. *Id.* at 14.

Mr. Wright is a Muslim. *Id.* His faith requires him to pray five times a day. *Id.* During this time, he was unable to place his prayer rug on the floor and bow his head on the floor. *Id.*

## III.
## Discussion

### A. Conditions of Confinement

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

The defendants dispute that Mr. Wright's toilet was leaking, arguing instead that there was simply a small water leak during the time at issue. But a reasonable jury believing Mr. Wright's version of the events – that the water in his cell smelled like sewage – could conclude that the leak was not a simple water leak but was a toilet leak and therefore that his cell floor was contaminated

with sewage. The defendants do not dispute that the conditions as Mr. Wright describes them are serious enough to implicate the Eighth Amendment. Indeed, the Seventh Circuit has held that inadequate sanitation can violate a prisoner's Eighth Amendment rights. *See Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing cases).

Mr. Nelson contends that he was never actually aware of the conditions of Mr. Wright's cell and therefore could not have been deliberately indifferent to those conditions. But the evidence in the light most favorable to Mr. Wright is that he notified Mr. Nelson about the unsanitary conditions of his cell on several occasions. Dkt. 1 at 9. Mr. Nelson therefore is not entitled to summary judgment on this element of Mr. Wright's claim.

Each of the defendants further argue, however, that they were not deliberately indifferent to the condition of Mr. Wright's cell – in other words, that they were not subjectively aware of these conditions and chose to ignore them – because the leak was reported immediately and repaired in a timely manner. But Mr. Wright has affirmed that his cell was regularly contaminated with toilet water and that he frequently told each of the defendants about these conditions. Dkt. 1 at 8-9. A reasonable jury believing this testimony could conclude that each of the defendants knew that Mr. Wright's cell was contaminated with unsanitary water. Further, the defendants argue that, because they put in a work order for the cell and because Mr. Wright was able to clean the floor, a jury could not conclude that they chose to ignore his plight. But it is undisputed that the leak was not fixed for three weeks. During that time, Mr. Wright affirms that he cleaned the cell with his own towels, clothing, and hygiene supplies. *Id.* at 6, 11. While he agrees that he was let out of his cell to mop up, he affirms that this happened only twice during the three-week period. *Id.* at 11. A reasonable jury could conclude based on these facts that the defendants were aware that Mr. Wright was experiencing unsanitary conditions for a prolonged period and they "decided not to do

5

anything" to help Mr. Wright "though [they] could easily have done so." *Merritt v. McClafferty*, No. 3:21-CV-502-DRL, 2023 WL 8543578, at *3 (N.D. Ind. Dec. 11, 2023) (quoting *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005)). Accordingly, the defendants are not entitled to summary judgment on Mr. Wright's conditions-of-confinement claim.

### B. RLUIPA

RLUIPA requires an inmate to show that the challenged prison practice substantially burdens his religious exercise and that his request for a religious exemption is sincere. *See Holt v. Hobbs,* 574 U.S. 352, 361 (2015); *West v. Radtke*, 48 F.4th 836, 844 (7th Cir. 2022) (citation omitted). "Religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Holt*, 574 U.S. at 361 (citing 42 U.S.C. § 2000cc–5(7)(A)). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Id*. A substantial burden on religious exercise occurs when a prison attaches some meaningful negative consequence to an inmate's religious exercise, forcing him to choose between violating his religion and incurring that negative consequence. *Id.* (citing *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019)).

As with Mr. Wright's Eighth Amendment claim, the defendants argue that Mr. Wright's right to practice his religion was not substantially burdened because the leak in his cell was eventually fixed. They also contend that Mr. Wright could have used a prayer mat on the floor after cleaning the floor, used his bed or desk, or asked for any other option to pray, but he failed to do so. But the facts in the light most favorable to Mr. Wright are that he experienced a three-week period during which the floor of his cell was often contaminated with toilet water. *See Hogan v. Vanihel*, No. 2:22-CV-00294-JMS-MJD, 2024 WL 3988984, at *6 (S.D. Ind. Aug. 29, 2024) ("[A] reasonable juror could conclude that a few pieces of extra clothing and soap would be

6

inadequate to cleanse and sanitize Mr. Hogan's floor for prayers after it was flooded with enough sewage to cover the floor."). And there is no evidence that the defendants' proposed solutions are consistent with Mr. Wright's religious beliefs. The defendants go on to argue that Mr. Wright was allowed out of his cell for two hours per day and could have conducted his prayers then. But, as Mr. Wright points out, as a Muslim, he is required to pray five times a day. Finally, the defendants argue that he never alerted them to his inability to conduct his prayers, but this argument, at best, speaks to Mr. Wright's credibility regarding the requirements of his religious practices, a determination that the Court cannot make at the summary judgment stage.

For these reasons, the defendants are not entitled to summary judgment on Mr. Wright's RLUIPA claim.

**C. Retaliation**

Finally, Mr. Wright alleges that Mr. Nelson retaliated against him by placing and keeping him in the contaminated cell. To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

The defendants do not dispute that Mr. Wright engaged in protected First Amendment activity by filing grievances, so the Court focuses on the second and third elements.

### a. Deprivation Likely to Deter Future First Amendment Activity

Whether allegedly retaliatory conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff," *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). Here, Mr. Wright has designated evidence that he was placed in a cell that was contaminated with toilet water for three weeks. A reasonable jury could conclude that a person of ordinary firmness would be deterred from participating in First Amendment activity as a result.

### b. Motivating Factor

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats retaliatory arrest claim but not if plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

First, Mr. Nelson argues that he did not have any role in placing Mr. Wright in his cell. But Mr. Wright has designated evidence that Mr. Nelson was responsible for housing assignments.

8

Dkt. 74-1 at 3. Next, Mr. Nelson argues that Mr. Wright cannot show that his placement in the M-Unit was motivated by his filing of grievances. Mr. Nelson points out that, before he was in the M-Unit, Mr. Wright had been placed in segregation and that he was simply moved back to that unit after serving his time in segregation. But Mr. Wright's claim is not based simply on his placement in the M-Unit. Instead, Mr. Wright complains of being placed in a cell in that Unit that was contaminated with toilet water.

Mr. Nelson next argues that Mr. Wright has not identified a particular grievance that forms the basis of his retaliation claim. But Mr. Wright contends that he filed a grievance against Mr. Nelson shortly before he was moved. Dkt. 1 at 5. Further, Mr. Wright has designated evidence that, in January of 2021, Mr. Nelson told him that if he did not stop complaining about bed moves he would make his life "a living hell." Dkt. 74-1 at 57. A reasonable jury believing this testimony could conclude that Mr. Nelson placed and kept Mr. Wright in the cell for retaliatory reasons. Mr. Nelson is therefore not entitled to summary judgment on this claim.

## IV.
## Conclusion

The defendants' motion for summary judgment, dkt. [61], is **denied**.

Mr. Wright's Eighth Amendment, RLUIPA, First Amendment free exercise, and retaliation claims remain. The Court notes that the RLUIPA claims are proceeding against the defendants in their official capacities.

The **clerk is directed** to send Mr. Wright a motion for assistance recruiting counsel with his copy of this Order. Mr. Wright has **through March 6, 2026**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se. Once the motion has been

ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date:    2/12/2026

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CARLTON WRIGHT
208902
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com